

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| IN THE MATTER OF THE ISSUANCE OF A CRIMINAL COMPLAINT AND ARREST WARRANT RE: | UNDER SEAL |
| Troy Edwin Leitner | Case No. 2:23-mj-53 |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Megan D. Beck, being duly sworn, hereby depose and state:

Introduction and Agent Background

1. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant and make arrests.

2. I am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation (FBI). I have been employed by the FBI as a Special Agent since October, 2019. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510 (7). That is, I am an officer of the United States, who is empowered by law to conduct investigations regarding violations of United States law, to execute warrants issued under the authority of the United States, and to make arrests of the offenses enumerated in 18 U.S.C. § 2251 *et seq.* In the course of my duties, I am responsible for investigating crimes which include, but are not limited to, Hobbs Act, Firearm and Drug violations, and Kidnapping. I have previously been involved in criminal investigations concerning violations of other federal laws. Since joining the FBI, I have received specialized training in computer harassment investigations, identifying and seizing electronic evidence,

computer forensics, recovery, and social site investigations. In the course of my employment as a sworn law enforcement officer, I have participated in the execution of numerous search warrants resulting in the seizure of computers, magnetic storage media for computers, other electronic media, and other items evidencing violations of state and federal laws.

3. This affidavit is submitted in support of an application for a criminal complaint and arrest warrant charging TROY EDWIN LEITNER (hereinafter "LEITNER") with a violation of 18 U.S.C. § 1201 (kidnapping).

4. The facts in this affidavit come from my personal observations and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Rather, I have included only the facts that are sufficient to establish probable cause for the issuance of a criminal complaint and the issuance of an arrest warrant for LEITNER for the above-described criminal violation.

Probable Cause

5. On or about March 16, 2022, Jane Doe was abducted by LEITNER from her residence Norfolk, Virginia. LEITNER then took Jane Doe and transported her in interstate commerce outside the Commonwealth of Virginia, before leaving Jane Doe at a hospital in Manning, South Carolina on March 18, 2022.

6. Jane Doe was renting a bedroom inside a residence located at located at 1201 Sheppard Avenue, and Jane Doe was struggling with an addiction to heroin at the time. Before interacting with Jane Doe, LEITNER went to Jane Doe's neighbor's residence and knocked on the door. When the door opened, LEITNER showed a photograph and informed the resident that LEITNER had an arrest warrant for Jane Doe. The neighbor asked for LEITNER's credentials

2

and LEITNER presented to the neighbor what appeared to be valid credentials. LEITNER was wearing tactical shorts, a jacket containing the language "Fugitive Recovery Agent," a badge on a chain around his neck, and a pistol in a holster. LEITNER provided the neighbor with a business card with his name, "Fugitive Recovery Agent," and the telephone number 570-233-5044. The neighbor informed LEITNER that Jane Doe lived at a different residence. LEITNER told the neighbor that LEITNER was taking Jane Doe to a rehabilitation facility in Richmond, Virginia with LEITNER's other counterparts that were currently working in Ocean View for other fugitives. LEITNER was driving a 4-door SUV with Pennsylvania license plates.

7. The neighbor called the owner of 1201 Sheppard Avenue and discussed the situation. The owner of the Sheppard Avenue residence granted permission for the neighbor to let LEITNER into the residence. The neighbor walked with LEITNER across the street to 1201 Sheppard Avenue. The neighbor advised LEITNER that Jane Doe may not be home. The neighbor and LEITNER entered the rear door of the residence. The neighbor told LEITNER where in the residence Jane Doe's bedroom was located. LEITNER had his pistol out of the holster. LEITNER knocked on the door, opened the door, and entered the room with his pistol drawn. LEITNER proceeded to "clear" the room. After discovering that Jane Doe was not present, LEITNER proceeded to "clear" the rest of the residence with his gun drawn.

8. The neighbor informed LEITNER that LEITNER could park his vehicle outside of Jane Doe's residence and wait. LEITNER parked in front of the neighbor's residence for approximately 30 to 45 minutes before leaving. The neighbor was unaware of where LEITNER went. Later in the afternoon, a scooter pulled up to 1201 Sheppard Avenue and people went inside the residence. The neighbor called LEITNER utilizing the telephone number on the business card that LEITNER left with the neighbor earlier in the day. The neighbor informed

3

LEITNER that residents were home at 1201. Approximately 15 to 20 minutes later, LEITNER's vehicle was parked at the back corner of 1201 Sheppard Avenue by a fence. LEITNER brought a male, a female, and Jane Doe out of the residence.

9. LEITNER put Jane Doe into handcuffs and told her that she was under arrest. The handcuffs were silver, metal, and heavy. Jane Doe asked LEITNER multiple times if he would loosen the handcuffs because they were hurting her, and LEITNER said no. LEITNER told Jane Doe that he was going to take her somewhere to ask her questions and then he was going to bring her back to her residence. Jane Doe was scared and did not want any contact with the police, so she complied with LEITNER's directions. Jane Doe was high on heroin at the time LEITNER first interacted with her. The neighbor's wife photographed the incidence and one photograph revealed a Pennsylvania license plate number LWA-7363, which was registered to LEITNER.

10. Upon leaving Jane Doe's residence, LEITNER took Jane Doe to the Ocean View Inn. While at Ocean View Inn, LEITNER told Jane Doe that if she ran that he would shoot her. Jane Doe saw a gun on LEITNER's hip. LEITNER also handcuffed Jane Doe to a table while at the Ocean View Inn. LEITNER and Jane Doe stayed for approximately an hour before leaving. LEITNER told Jane Doe that they were going to "his office," which was in Richmond.

11. Jane Doe recalled traveling first to Richmond, Virginia, where she consumed heroin. LEITNER then took Jane Doe Southbound toward Florida and stopped with Jane Doe at several locations outside the Commonwealth of Virginia. Jane Doe was in and out of sleep during the travel in the vehicle. At some point during the trip, LEITNER called Jane Doe's mother on the telephone and informed her that he was taking Jane Doe to a rehabilitation center in Florida. LEITNER rented several hotel rooms from Richmond to South Carolina. When LEITNER and Jane Doe got out of his vehicle, LEITNER would tell Jane Doe to stay close to

him and for Jane Doe to pretend she was his girlfriend, so that he would not have to embarrass her by putting her in handcuffs.

12. The last time Jane Doe saw LEITNER's gun was in South Carolina. Jane Doe had gone into a bad neighborhood to attempt to purchase heroin, because she was getting sick from withdrawal. When Jane Doe returned, LEITNER had put on his entire "uniform" and was standing outside. LEITNER's gun was on his hip.

13. Jane Doe recalls stopping at a hotel at "South of the Border," which is a roadside attraction in South Carolina that's south of the North Carolina border.  LEITNER received a telephone call "from his boss" and got out of the vehicle. LEITNER went into the hotel but did not get a room.  Jane Doe later learned that LEITNER had been called by the police. LEITNER and Jane Doe left the hotel and drove for approximately one to two hours before stopping again. At this location, LEITNER got a hotel room because Jane Doe was starting to get very sick. Jane Doe went right to sleep once they got the room.  LEITNER later woke Jane Doe up and handed her a drink that he stated would make her feel better.  After Jane Doe drank the drink, she stated that she had "out of body experiences" and was scared.  During this time, Jane Doe reported that LEITNER sexually assaulted her.

14. On March 18, 2022, at approximately 5:51 a.m., LEITNER dropped Jane Doe off at McCloud Health Clarendon hospital in Manning, South Carolina.  Security at the facility observed a white male, LEITNER, pull a dark colored four door Jeep or SUV with multiple antennas into the ambulance bay of the hospital. The vehicle had a Pennsylvania license plate. LEITNER was "jittery" and "nervous."  LEITNER told security his name was "Agent LEITNER" and that he was a bounty hunter.  The man told security that he had picked up a girl, Jane Doe, on the side of the road and that Jane Doe was on drugs.  The McLeod Health Staff

placed Jane Doe in a wheelchair and took her inside. Security became suspicious and took a photograph of the man's license plate. The photograph revealed a Pennsylvania license plate number LWA-7363, which was registered to LEITNER. LEITNER pulled out to the red light near the hospital and ran a red light, making a left on to Raccoon Road. From there, LEITNER continued on Route 301 toward Interstate 95.

15. After the incident was reported to the local police, Highlands County Sherriff's Office (herein referred to as "HCS") in Sebring, Florida, near where Jane Doe's mother resides, attempted telephonic contact with LEITNER. During the call, a male individual answered stating he was "Agent LEITNER." During this conversation LEITNER stated "his office" received information of drug and prostitution activity occurring at Jane Doe's residence. LEITNER advised that personnel went to the residence and subsequently located Jane Doe, who agreed to assist in the apprehension of a drug dealer known by the nickname, "Moon". LEITNER then provided that he was taking Jane Doe to Daytona for rehab however, she would be taken to her mother's residence first. The estimated arrival would be March 19, 2022 at approximately 1600 hours.

16. HCS questioned LEITNER's statement of "his office" and inquired which department this would be, referencing several agencies, to include U.S. Marshals, FBI, and DEA, to which he stated he was not part of any of those, however was part of the Federal Fugitive Recovery. HCS made a statement that LEITNER was a bondsman, then to which he seemed to get upset stating he had more authority than them and could traverse state lines. HCS asked where LEITNER's "office" was based out of, to which he stated Washington D.C. HCS requested phone number to contact LEITNER's office to verify what was occurring. HCS indicated that Jane Doe had no warrant and thus, not understand LEITNER's involvement.

LEITNER stated "that's not how this works," and went on to explain he could provide his supervisor with the HCS phone number, and his supervisor could contact HCS. LEITNER advised he believed Jane Doe had a warrant initially, however he later learned this was not the case. LEITNER would not provide information as to the alleged warrant. No return telephone call was received by HCS.

## Conclusion

17. Based on the information and evidence set forth above, I respectfully submit that there is probable cause to establish that on or about March 16, 2022, within the Eastern District of Virginia and elsewhere, TROY EDWIN LEITNER has violated 18 U.S.C. § 1201 (kidnapping).

18. Accordingly, I request that a complaint and arrest warrant be issued, charging TROY EDWIN LEITNER with such offense.

Respectfully submitted,

*[signature]*

Special Agent Megan D. Beck
Federal Bureau of Investigation

Sworn and subscribed to before me on
April 10, 2023 in Norfolk, Virginia.

*[signature]*

Honorable Robert J. Krask
UNITED STATES MAGISTRATE JUDGE